# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A., | Case No. 1:21-cv-00252-ADA-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| MADERA COUNTY, et al., | (ECF No. 14) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

This case arises from the shooting death of Artemio Alfaro ("Alfaro" or "the Decedent"). Plaintiff J.A. ("Plaintiff" or "J.A."), the Decedent's minor child, through Guardian Ad Litem Luz Ana Venegas, brings claims individually and on behalf of the Decedent's estate. Plaintiff brings the instant civil rights action against the County of Madera ("the County" or "Madera"), Deputy Brendan Johnson ("Johnson"), Deputy Logan Majeski ("Majeski"), Deputy Jose Iniguez ("Iniguez"), and Does 1 through 25 (collectively, "Defendants"), alleging unlawful seizure, excessive force, and deprivation of due process pursuant to 42 U.S.C. § 1983, as well as state law causes of action for battery, negligence, wrongful death, and violation of the Bane Act.

The complaint commencing this action was filed on February 23, 2021, (ECF No. 1), and a first amended complaint ("FAC") was filed on May 21, 2021, (ECF No. 12). On June 4, 2021, Defendants filed a motion to dismiss. (ECF No. 14.) Plaintiff filed an opposition, and Defendants

filed a reply. (ECF Nos. 17, 18.) On September 12, 2022, the assigned District Judge referred the motion to dismiss to the undersigned. (ECF No. 25.)

For the reasons described below, the undersigned recommends that Defendants' motion to dismiss be granted in part and denied in part.

## I. SUMMARY OF ALLEGATIONS

The FAC alleges as follows: On April 29, 2020, officers of Madera County, including Defendants Johnson, Majeski, Iniguez, and Does (collectively, "Defendant Officers"), attempted to apprehend Alfaro, who was wanted for two warrants. The Defendant Officers had prior knowledge that Alfaro had a reputation of running from law enforcement when confronted.

The Defendant Officers formulated a plan to apprehend Alfaro, but Alfaro was able to get into his truck and drive away. The Defendant Officers chased after Alfaro, who was eventually located by Defendant Majeski on foot near a rural farmhouse. Alfaro was able to get back into his truck. Majeski got the driver-side door open and used his K-9 and Taser on Alfaro. Simultaneously, Defendant Iniguez attempted to restrain Alfaro from the passenger-side door. However, Alfaro was able to start the truck and put it in motion as Majeski and Iniguez moved away from the vehicle. Without ascertaining the location of the other officers, Defendant Johnson began shooting into the truck, firing seven times, pausing, and then firing three more times. Alfaro, having been hit with seven bullets, including one to the head, was handcuffed and pronounced dead at the scene.

The FAC raises the following claims: (1) unlawful seizure, use of excessive force, and deprivation of due process, in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (2) battery; (3) negligence and wrongful death; and (4) violation of the Bane Act.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the

1   light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on
2   other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813,
3   816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's
4   favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must
5   be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler,
6   627 F.3d 338, 342 (9th Cir. 2010).

7        A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter
8   jurisdiction. See Fed. R. Civ. P. 12 (b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or
9   factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing White v.
10  Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the
11  allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."
12  Safe Air, 373 F.3d at 1039. "By contrast, in a factual attack, the challenger disputes the truth of
13  the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

14       A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the
15  complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short
16  and plain statement of the claim showing that the pleader is entitled to relief" in order to "give
17  the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell
18  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,
19  47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant
20  is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

21       The first step in testing the sufficiency of the complaint is to identify any conclusory
22  allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action,
23  supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S.
24  at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires
25  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action
26  will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

27       After assuming the veracity of all well-pleaded factual allegations, the second step is for
28  the court to determine whether the complaint pleads "a claim to relief that is plausible on its

1 face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

**B. Leave to Amend**

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[P]ublic policy strongly encourages courts to permit amendments," and "[t]he policy of allowing amendments 'is to be applied with extreme liberality.'" Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). "However, 'liberality in granting leave to amend is subject to several limitations.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

"Not all of the factors merit equal weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend," Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995), but "[u]ndue delay by itself is insufficient to justify denying leave to amend," United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1167 (9th Cir. 2016). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at

1052. "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

### III.    DISCUSSION

#### A.  First Cause of Action Against Defendants Iniguez and Majeski

The FAC's First Cause of Action alleges unlawful seizure, use of excessive force, and deprivation of due process, in violation of the Fourth and Fourteenth Amendments. (ECF No. 12 at 4–5.)[1] In light of the FAC's "repeated use of the term 'Defendant Officers,' . . . within the[] first cause of action, Defendants move to dismiss Plaintiffs' claims as alleged or inferred to Deputies Iniguez and Majeski." (ECF No. 14 at 9.) The opposition clarifies that the "reference to 'Defendant Officers' using excessive force in paragraphs thirteen and seventeen was an oversight" and that the "clear intent . . . is to state an excessive force claim solely against Deputy Johnson." (ECF No. 17 at 6.)

In light of Plaintiff's clarification, to the extent the First Cause of Action can be construed as asserting an excessive force claim against Defendants Iniguez and/or Majeski, it should be dismissed without leave to amend. The undersigned recommends that Defendants' motion to dismiss be granted on this ground.

#### B.  Fourteenth Amendment Claim

In the First Cause of Action, the FAC also asserts that Plaintiff J.A. was "deprived of due process guaranteed by the Fourteenth Amendment and has suffered the loss of a familial relationship with" the Decedent. (ECF No. 12 at 5.) Defendants argue this claim should be dismissed despite district courts and the Ninth Circuit having "held an allegedly unjustified shooting by a law enforcement officer gives rise to a claim for violation of a plaintiff's Fourteenth Amendment due process rights to familial relationship," because "such a holding violates longstanding precedent from the United States Supreme Court." (ECF No. 14 at 10.) Plaintiff contends that the Fourteenth Amendment claim "for the permanent deprivation of her relationship with her father by the intentional act of Deputy Johnson in killing Artemio is valid in this circuit." (ECF No. 17 at 7.)

---

[1] Citations refer to the pagination assigned by the CM/ECF system.

5

As acknowledged by Defendants in the motion to dismiss, the Ninth Circuit has recognized that "the same allegation of excessive force giving rise to [a decedent]'s substantive due process claim based on his loss of life also gives the children a substantive due process claim based on their loss of his companionship" because "the state has no legitimate interest in interfering with this liberty interest through the use of *excessive* force by police officers." Smith v. City of Fontana, 818 F.2d 1411, 1419–20 (9th Cir. 1987), overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1040 n.1 (9th Cir.1999) (en banc). Defendants argue, however, that Daniels v. Williams, 474 U.S. 327 (1986), precludes such a Fourteenth Amendment claim. In Daniels, the Supreme Court stated that "[h]istorically, [the Fourteenth Amendment's] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." Id. at 331. Defendants contend that because "Plaintiff J.A. has failed to allege any facts establishing Deputy Johnson intended his use of deadly force to interfere with her familial relationship with Mr. Alfaro," the Court should dismiss the Fourteenth Amendment claim. (ECF No. 14 at 12.)

"A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided." Hart v. Massanari, 266 F.3d 1155, 1175 (9th Cir. 2001). "Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." Id. at 1171. However, there are "circumstances in which a district court or a three-judge panel of [the Ninth Circuit] can disregard circuit precedent because of *intervening* Supreme Court authority: '[W]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority[,] . . . a three judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled.'" Day v. Apoliona, 496 F.3d 1027, 1031 (9th Cir. 2007) (emphasis and first alteration added) (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).

Although Defendants argue that Smith contravenes the Supreme Court's decision in Daniels, Smith in fact cites to Daniels and further, the Smith panel "temporarily vacated

6

1  submission of the plaintiffs' appeal in order to await the decision of the Supreme Court
2  in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)[.]" Smith, 818 F.2d
3  at 1413 n.1. The Court also notes that the Supreme Court subsequently denied *certiorari*. City of
4  Fontana v. Smith, 484 U.S. 935 (1987). Courts "decline to apply . . . past [circuit] precedents
5  only when *more recent* Supreme Court decisions are 'clearly irreconcilable' with those
6  precedents." Apache Stronghold v. United States, 38 F.4th 742, 766 (9th Cir. 2022) (emphasis
7  added) (citing Miller, 335 F.3d at 893). As Daniels predates Smith and the Smith panel clearly
8  was aware of Daniels, the Court finds that Smith is binding authority on this Court. Accordingly,
9  the undersigned recommends Defendants' motion to dismiss be denied on this ground.

10         **C. Timeliness**

11         Defendants assert that Plaintiff's state law claims should be dismissed because they are
12 barred as a matter of law for failure to timely file the complaint and for failure to timely file a
13 tort claim. (ECF No. 14 at 12–16.) The California Government Claims Act requires that a tort
14 claim for damages against a public entity or its employees be presented to California's Victim
15 Compensation and Government Claims Board ("the Board") no more than six months after the
16 cause of action accrues. Cal. Gov't Code §§ 905, 910, 911.2, 950.2, 950.6. Presentation of a
17 written claim and action on or rejection of the claim by the Board are conditions precedent to
18 suit. Cal. Gov't Code §§ 945.4, 950.6; Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208–09
19 (2007). California Government Code section 945.6 requires "any suit brought against a public
20 entity" to be commenced no more than six months after the public entity rejects the claim. Cal.
21 Gov't Code § 945.6(a)(1). Here, the Board rejected Plaintiff's claims on September 14, 2020.
22 (ECF No. 14 at 4.) Thus, the statute of limitations expired on March 15, 2021.

23                1. Timeliness of Complaint

24         Defendants argue that because under California law a minor may only bring suit as long
25 as a guardian conducts the proceedings, Plaintiff could not have filed the complaint commencing
26 this action on February 23, 2021, given that the guardian ad litem was not appointed for J.A.
27 until March 4, 2021. Defendants contend that "the original complaint filing date cannot be relied
28 upon by Plaintiffs since Plaintiff J.A. had no right to come into court," and that the amended

1  complaint, filed on May 21, 2021, was untimely because the statute of limitation expired on
2  March 15, 2021, six months after Madera County rejected Plaintiff's tort claim on September 14,
3  2020. (ECF No. 14 at 14.) Plaintiffs argue that there is no basis to dismiss any of the claims at
4  this point because a guardian ad litem has been appointed and to hold otherwise would violate
5  Federal Rule of Civil Procedure 17(a)(3). (ECF No. 17 at 9.)

In Geringer v. Sierra Madre Police Department, No. CV 09-3966 PA (CTX), 2010 WL 11601304 (C.D. Cal. Feb. 26, 2010), the district court was confronted with a similar argument, and the Court finds Geringer instructive. In that case, plaintiffs Geringer and Baby G alleged that their constitutional rights were violated when they sought police protection and assistance after a domestic dispute between Geringer and Baby G's mother. A complaint raising claims pursuant to 42 U.S.C. §§ 1983, 1985 and the California state constitution in addition to intentional and negligent infliction of emotional distress was lodged on June 3, 2009. Id. at *1, 2. That same day, Geringer submitted a petition to appoint him as guardian ad litem for Baby G. On June 8, 2009, the district court denied the petition because the action raised a potential conflict of interest and ordered Geringer to submit three other names of potential guardians. On June 22, 2009, Geringer submitted the names, and on June 30, 2009, the district court appointed Baby G's paternal grandfather as his guardian ad litem. The next day, on July 1, 2009, the complaint was filed. Id. at *2. The defendants moved to dismiss the complaint because the statute of limitations expired on June 5, 2009, and the complaint was not actually filed until July 1. Id. at *3. The district court found that "because the Plaintiffs lodged the Complaint within the permitted statutory time frame, the Complaint was timely filed," noting that "the Complaint was in the possession of the court clerk's office before the limitations period had expired" and that "although Geringer's original petition for appointment of a guardian ad litem for Baby G was denied, Geringer's subsequent request for the appointment of Baby G's paternal grandfather was granted." Id.

Similarly, here, the initial complaint was submitted to the Court on February 23, 2021, before the statute of limitations expired. Additionally, although the original motion to appoint guardian ad litem was denied, the subsequent motion was granted and the Court appointed the guardian ad litem on March 4, 2021, before the statute of limitations expired. As any alleged

1 deficiency was resolved before the statute of limitations expired, the Court finds that the original
2 complaint was timely filed, and thus, in turn, the FAC was timely filed. See 4 Moore's Federal
3 Practice – Civil § 17.20 (2022) ("A timely capacity objection does not result in immediate
4 dismissal. The party lacking capacity may correct the defect by complying with applicable law,
5 or by substituting a party with capacity. Curative actions relate back to the time of filing.");
6 J.K.G. v. Cnty. of San Diego, No. 11CV305 JLS RBB, 2011 WL 5218253, at *2–3 (S.D. Cal.
7 Nov. 2, 2011) (denying motion to dismiss because "[a]lthough Plaintiff had not yet secured a
8 guardian ad litum [sic] at the time he filed his complaint and the summons was issued, a guardian
9 ad litum [sic] has since been appointed"). Accordingly, the undersigned recommends that
10 Defendants' motion to dismiss be denied on this ground.

### 2. Timeliness of Tort Claim

Defendants assert that "[w]hen the filing of a tort claim is a condition precedent to commencing a civil action, a guardian ad litem must be appointed by a court prior to the filing of a tort claim," citing to In re Nicole H., 201 Cal. App. 4th 388, 400–01 (2011), and County of Los Angeles v. Superior Court (Crystal B., Steven G., Anita G.), 91 Cal. App. 4th 1303, 1311 n.8 (2001). (ECF No. 14 at 15.) Defendants contend that because a guardian ad litem was not appointed prior to the filing of the tort claim, Plaintiff's tort claim "is meritless and cannot be said to satisfy the requirements of the Government Code." (Id.) Plaintiff argues that Defendants' assertion that "in every case in which a tort claim is filed to preserve the rights of a minor, a guardian must be appointed prior to the filing" is an "unusual view of the Government Code," and the two cases cited by Defendants are distinguishable because in those cases "the county had taken the place of the parents and the tort claims of the minors were thus against the very entity that had control over them." (ECF No. 17 at 9.)

Although Defendants cite to County of Los Angeles to support their argument, that opinion in fact rejects Defendants' contention and specifically notes "the *Hernandez*[2] court concluded that formal appointment of a guardian ad litem is not a prerequisite before a minor's tort claim under the [California Tort Claims] Act can be presented, because, *if a minor has a*

---

[2] Hernandez v. Cnty. of Los Angeles, 42 Cal. 3d 1020 (1986) (en banc).

*parent or another adult responsible for the child's care*, that minor may not invoke the tolling provisions because *that* person can present a claim on the minor's behalf." 91 Cal. App. 4th at 1314–15 (footnote added) (emphasis in original). Here, unlike the minors in Nicole H.[3] and County of Los Angeles,[4] J.A. has a mother, Ms. Venegas, who presented the tort claims on J.A.'s behalf. Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied on this ground.

### D. Third Cause of Action

#### 1. California Government Code Section 820.2

California Government Code section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Defendants argue that Johnson, Iniguez, and Majeski "are immune from liability arising from their decision to arrest Mr. Alfaro, how to effectuate his arrest, to pursue him when he fled arrest in his truck, and their attempt to arrest him and prevent his escape when he reentered his truck" based on California Government Code section 820.2. (ECF No. 14 at 17–18.) Plaintiff contends that courts "have drawn a distinction between a discretionary decision . . . and the negligent implementation of a decision" and that Plaintiff's "claim is based on the inept manner in which the attempted arrest took place." (ECF No. 17 at 10.)

"A 'workable definition' of immune discretionary acts draws the line between 'planning' and 'operational' functions of government." Liberal v. Estrada, 632 F.3d 1064, 1084 (9th Cir. 2011) (some internal quotation marks omitted) (quoting Caldwell v. Montoya, 10 Cal.4th 972, 981 (1995)). "Immunity is reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" Liberal, 632 F.3d at 1084 (some quotation marks

---

[3] A "dependent minor" "reported that she had been raped by another minor at the foster home where she was first detained" and had "a potential tort claim against the county." Nicole H., 201 Cal. App. 4th at 392, 393.

[4] "Minors here had no parent, or legal parent equivalent such as a guardian, legally capable to act on their behalf." Cnty. of Los Angeles, 91 Cal. App. 4th at 1315.

1 omitted) (alterations in original) (quoting Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1051 (2007)). Section 820.2 "covers only 'policy' decisions made by a 'coordinate branch[ ] of government,' not 'operational decision[s] by the police purporting to apply the law.'" Sharp v. Cnty. of Orange, 871 F.3d 901, 920 (9th Cir. 2017) (alterations in the original) (quoting Liberal, 632 F.3d at 1084–85). The California Supreme Court has explained that an act is ministerial if "it amount[s] 'only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his own,'" and an act is discretionary if "it require[s] 'personal deliberation, decision and judgment.'" McCorkle v. City of Los Angeles, 70 Cal. 2d 252, 261 (1969) (quoting Morgan v. Cnty. of Yuba, 230 Cal. App. 2d 938, 942–43 (1964)). See Bell v. California, 63 Cal. App. 4th 919, 929 (1998) (noting that rule of discretionary act immunity "requires proof that the specific conduct that gave rise to the suit involved an actual exercise of discretion—a conscious balancing of risks and advantages").

"Discretionary immunity under section 820.2 has been found to apply to many areas of police work." Conway v. Cnty. of Tuolumne, 231 Cal. App. 4th 1005, 1015 (2014). "Police officers, however, are not immune under section 820.2 when their acts are ministerial or public policy dictates against immunity." Id. Thus, section 820.2 "applies to police officers' discretionary decisions made during arrests. But it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest." Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007) (citations omitted). Accord Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California denies immunity to officers who use excessive force in arresting a suspect." (citations omitted)); Conway, 231 Cal. App. 4th at 1015 ("[D]iscretionary immunity does not apply to . . . using unreasonable force when making an arrest or overcoming resistance to it." (citations omitted)). Additionally, "classification of the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." McCorkle, 70 Cal. 2d at 261 (citations omitted). "Further, a finding of [section 820.2] immunity 'requires a showing that the specific conduct giving rise to the suit

11

involved an *actual* exercise of discretion, i.e., a conscious balancing of risks and advantages.'" Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154, 1161 (9th Cir. 2019) (some internal quotation marks omitted) (quoting Caldwell v. Montoya, 10 Cal. 4th 972, 42 Cal. Rptr. 2d 842, 897 (1995)).

Defendants rely on Conway v. County of Tuolumne, 231 Cal. App. 4th 1005 (2014), to support their argument that "Deputies Johnson, Iniguez, and/or Majeski are immune from liability as it relates to their selection of means to effectuate Mr. Alfaro's arrest, the vehicle pursuit, and their use of less than lethal force to prevent his attempts to evade arrest." (ECF No. 18 at 6–7.) Conway concerned an unsuccessful attempt to apprehend the plaintiff's adult son (who reportedly had fired shots at the plaintiff) in which officers fired a tear gas canister into the plaintiff's mobilehome. The gas could not be removed and made the home uninhabitable. The plaintiff brought suit, alleging negligence, trespass, nuisance, and strict liability for an ultrahazardous activity. The trial court granted summary judgment in favor of the defendant county based on section 820.2 immunity, and the California Court of Appeal affirmed. 231 Cal. App. 4th at 1008, 1011. In Conway, the court emphasized that "the decision to use tear gas resulted from choices and judgments made in response to changing circumstances;[5] it was not made in blind obedience to orders." Id. at 1019 (footnote added). Additionally, the officers had been advised by dispatch that the suspect, "a felon prohibited from possessing a firearm, had a .357 revolver registered to him, was intoxicated, had brandished a handgun . . . and had fired three gunshots in [the plaintiff]'s direction." Id. at 1009. In deciding that discretionary immunity applied, the court also underscored the narrowness of its decision:

---

[5] Sergeant Evans, along with other officers, initially responded to the 911 call and arrived on the scene. Evans set up a perimeter and requested the use of the SWAT team. Conway, 231 Cal. App. 4th at 1009–10. "[T]he hostage negotiation team decided to attempt contact with a mobile 'throw phone,' which operates as a listening device, that was placed in the house through a window. Multiple calls were made to the phone over the course of 25 minutes," but the phone was not answered and nothing was heard from the phone. Id. at 1010. After reviewing the suspect's criminal history, Evans asked the SWAT commander and the acting lieutenant "for authorization to deploy two tear gas canisters in an effort to resolve the situation." Id. "Evans made the request because it is an approved, less-than-lethal alternative, and avoids the necessity of sending an officer into the residence at substantial risk of harm to person and property; otherwise, officers would have been forced to 'storm' the residence by kicking in both points of entry and would have had to attempt to subdue [the suspect] without firing any shots. Based on [the suspect]'s criminal history and previous use of deadly force, Evans believed, in his professional opinion, that [the suspect] would attempt to use deadly force against the officers." Id.

12

> The arrest of a suspected armed assailant mandates decisions affecting public safety; liability for such split-second decisions conceivably could hamstring officials with unpleasant results. [Plaintiff] argues that by extending immunity in this case, every action by an officer, no matter how minor, will be subject to immunity as long as the officer states he or she made a choice between two options. Our decision, however, is not that broad. We hold only that, given the importance of the decisions involved and the potential impact of liability on these decisions, section 820.2 provides immunity for the officers' actions here[.]

Conway, 231 Cal. App. 4th at 1020. Thus, "Conway is case where public policy favored immunity because of the extreme circumstances and the deliberative and consequential nature of the decision involved." Zayas v. Ortega, No. 17-CV-02739-EMC, 2018 WL 11227735, at *16–17 (N.D. Cal. Aug. 10, 2018).

Conway is substantively distinguishable. Unlike Conway, the instant case does not involve a suspected armed assailant. Additionally, the record before the court in Conway clearly established that the firing of the tear gas canister into the plaintiff's home "involved an *actual* exercise of discretion, i.e., a conscious balancing of risks and advantages." Steinle, 919 F.3d at 1161 (internal quotation marks and citation omitted). Here, further factual development is necessary to determine whether Defendants Johnson, Iniguez, and Majeski's actions involved an actual exercise of discretion and conscious balancing of risks and advantages.

The FAC allegations, taken as true, are broad enough to encompass conduct not within section 820.2. The Court cannot resolve at the pleading stage whether section 820.2 bars Plaintiff's claims.[6] See Lopez v. S. Cal. Rapid Transit Dist., 40 Cal. 3d 780, 794 (1985) (holding that because entitlement to section 820.2 immunity requires a showing that the employee consciously exercised discretion by balancing potential risks and advantages, "[s]uch a showing was not and could not have been made by [the defendant] at the demurrer stage"); AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 640 (9th Cir. 2012) (stating that "the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and

---

[6] This conclusion does not preclude Defendants from reasserting any statutory immunity at a later stage in the proceedings.

13

benefits"). Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied on this ground.

### 2. Sufficiency of Allegations with Respect to Defendants Iniguez and Majeski

Defendants assert that Iniguez and Majeski are immune from liability pursuant to California Government Code sections 820.4[7] and 820.8[8] because "Plaintiffs fail to allege any facts demonstrating Deputies Iniguez and Majeski did not exercise due care while attempting to arrest Mr. Alfaro." (ECF No. 14 at 18.) Specifically, Defendants argue that the FAC "is devoid of any factual allegations establishing what tactics by each of the Deputies was negligent or how the way they individually handled the[] incident was negligent. . . . [or] how each of the Deputies breach their duty [of] due care to Mr. Alfaro." (Id.)  "The mere fact Mr. Alfaro was able to start his truck despite Deputies Iniguez and Majeski's efforts, does not make their actions negligent nor does it establish Deputy Majeski's use of his tazer or K-9 improper." (Id.) Plaintiffs contend that they have alleged as "many detailed facts as possible given what is known about the incident at this time" such that dismissal is not warranted. (ECF No. 17 at 11.)

In Hayes v. County of San Diego, 57 Cal. 4th 622 (2013), the issue presented was "[w]hether under California negligence law, liability can arise from tactical conduct and decisions employed by law enforcement preceding the use of deadly force." Id. at 626. The California Supreme Court answered in the affirmative, holding that "based on long-established state law . . . such liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." Id. Additionally, "[c]ourts in this circuit have denied motions for summary

---

[7] California Government Code section 820.4 states: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." Cal. Gov't Code § 820.4. "Logically, the exercise of due care required by this provision presupposes the employee was not negligent or acting in an intentionally injurious manner."  Green v. Cnty. of Yuba, No. 2:18-CV-02234-JAM-AC, 2019 WL 827638, at *5 (E.D. Cal. Feb. 21, 2019). "[W]hen a claim of negligence is alleged against a government employee, § 820.4 merely amounts to a denial that due care was not exercised[.]" Neylon v. Cnty. of Inyo, No. 1:16-CV-0712-AWI-JLT, 2017 WL 3670925, at *11 (E.D. Cal. Aug. 25, 2017).

[8] Defendants argue that Iniguez and Majeski are "immune from any injury caused by the negligence of another person," citing to California Government Code section 820.8. (ECF No. 14 at 18.) California Government Code section 820.8 states: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." Cal. Gov't Code § 820.8.

judgment on negligence claims where a police officer creates a dangerous situation that results in another officer using lethal force." Est. of Smith v. Holslag, No. 16-CV-2989-WQH-MSB, 2020 WL 7863428, at *14 (S.D. Cal. Dec. 31, 2020), aff'd and remanded, No. 21-55073, 2022 WL 1224001 (9th Cir. Apr. 26, 2022). Further, the Ninth Circuit has recognized that "[d]eadly force cases pose a particularly difficult problem . . . because the officer defendant is often the only surviving eyewitness." Gonzalez v. City of Anaheim, 747 F.3d 789, 794 (9th Cir. 2014) (internal quotation marks omitted) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)). "'Because the person most likely to rebut the officers' version of events—the one killed—can't testify,' the Ninth Circuit has held that courts should 'carefully examine all the evidence' produced during discovery and grant summary judgment 'sparingly' in excessive force cases." Ikeda v. City & Cnty. of Honolulu, No. 19-CV-00009-DKW-KJM, 2019 WL 4684455, at *4 (D. Haw. Sept. 25, 2019) (quoting S.B. v. Cnty. of San Diego, 864 F.3d 1010, 1014 (9th Cir. 2017)). "That challenge is compounded here by the fact that discovery has yet to occur. This matter is only before the Court on a *motion to dismiss* the FAC[.]" Ikeda, 2019 WL 4684455, at *4.

Although the factual allegations in support of Plaintiff's negligence claim against Defendants Iniguez and Majeski are relatively sparse, the Court finds that they are sufficient to withstand Defendants' Rule 12(b)(6) motion to dismiss given that "[c]ourts in this circuit have denied motions for summary judgment on negligence claims where a police officer creates a dangerous situation that results in another officer using lethal force," Est. of Smith, 2020 WL 7863428, at *14, and the particular challenge presented by deadly force cases where the only witnesses are the officer defendants. Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied on this ground.

3. Failure to Train

In the Third Cause of Action, the FAC asserts the "Defendants negligently and recklessly breached their duty to use due care, which directly and proximately resulted in the injuries and damages to the decedent and the Plaintiff" by, *inter alia*, the Madera County Sheriff's Office's "failure . . . to properly train and supervise both deputies and K-9s." (ECF No. 12 at 6–7, ¶ 26.) Defendants argue that the FAC fails to allege a valid cause of action for failure to train and/or

15

supervise because: (1) the FAC "is devoid of any factual allegations establishing Deputies Iniguez, Johnson or Majeski were responsible for training and/or supervision"; (2) the FAC "fails to identify any individual responsible for training and/or supervision at the Madera County Sheriff's Office or how they were actually negligent"; and (3) there is no California statute creating direct liability against Defendant Madera County. (ECF No. 14 at 19–20.) In the opposition, Plaintiff clarifies:

> The Plaintiffs do not seek to allege negligent training and supervision claims against Deputies Iniguez, Johnson or Majeski. However, based on their inept implementation of the "plan" to arrest Mr. Alfaro, the Plaintiffs seek to hold those responsible for their deficient training and supervision liable. The Plaintiffs have identified these individuals as DOE Defendants at this time, again because their identifies are unknown at this early stage of the case. The plaintiffs view these unknown supervisors as having direct liability of their own and are not seeking to impose vicarious liability upon them.

(ECF No. 17 at 12.)

"California law does not recognize a general duty of care on the part of supervisors with respect to negligent hiring, retention, or training. Rather, as explained by the California Supreme Court in *William S. Hart*, 'the potential legal responsibility of District administrators and supervisors for negligently hiring or retaining . . . arises from the special relationship they had with plaintiff.'" Est. of Osuna v. Cnty. of Stanislaus, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019) (quoting C.A. v. William S. Hart Union High Sch. Dist., 53 Cal. 4th 861, 877 (2012)). "Therefore, whether . . . the unnamed policy-making defendants may be held directly liable for negligent hiring, retention, and failure to train, and whether the County and Sheriff's Department may be held vicariously liable on that basis, turns on whether . . . the unnamed policy-making defendants had a special relationship with the decedent." Osuna, 392 F. Supp. 3d at 1182–83. In Osuna, the unarmed decedent was shot by deputies, and plaintiffs alleged that policy-making defendants "breached a duty owed to the decedent by hiring, retaining, and failing to adequately train and supervise" the defendants who used excessive force against the decedent. Osuna, 392 F. Supp. 3d at 1167, 1181. Osuna found that "other district courts have declined to find such a [special] relationship under circumstances similar to those presented here" but granted leave "to

1  plaintiffs to amend their complaint with regard to the existence of a special relationship." Id. at
2  1183.
3      Here, the FAC contains no factual allegations whatsoever with respect to the alleged
4  failure of the Madera County Sheriff's Office and Doe Defendants to properly train and
5  supervise deputies and K-9s. Accordingly, the undersigned recommends that Defendants' motion
6  to dismiss be granted on this ground and to the extent it is based upon negligent training and/or
7  supervision, Plaintiffs' Third Cause of Action be dismissed without leave to amend.[9]

8      **E. Bane Act**

9      In the Fifth Cause of Action, Plaintiff asserts a violation of the Bane Act, California Civil
10  Code section 52.1. (ECF No. 12 at 7.) Defendants assert that Plaintiff's Bane Act claim should
11  be dismissed because: (1) the Bane Act provides no derivative cause of action for Plaintiff J.A.
12  and thus, is improper as a matter of law; (2) the FAC "is devoid of any actions by Deputies
13  Iniguez and/or Majeski which establish they interfered with or attempted to interfere with Mr.
14  Alfaro's constitutional or statutory rights"; and (3) with respect to Defendant Johnson, the FAC
15  fails to assert any factual allegations that satisfy the additional intent requirement. (ECF No. 14
16  at 22.) In the opposition, Plaintiff clarifies that the FAC "assert[s] a Bane Act claim on behalf of
17  the estate against Defendant Johnson only." (ECF No. 17 at 12.)

18      "The Bane Act civilly protects individuals from conduct aimed at interfering with rights
19  that are secured by federal or state law, where the interference is carried out 'by threats,
20  intimidation or coercion,'" and "claims under section 52.1 may be brought against public
21  officials who are alleged to interfere with protected rights, and qualified immunity is not
22  available for those claims." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1040–41 (9th Cir.
23  2018) (quoting Venegas v. Cnty. of Los Angeles, 153 Cal. App. 4th 1230, 63 Cal. Rptr. 3d 741,
24  742 (2007)). With respect "to the necessary showing for an excessive force claim under the Bane

---

[9] In the opposition, Plaintiff did not provide any factual allegations they would add if given the opportunity to amend. Accordingly, the undersigned does not recommend granting leave to amend at this time. However, this recommendation does not preclude Plaintiff from filing a motion for leave to amend asserting the specific facts that would be pled in an amended complaint with respect to the alleged failure of the Madera County Sheriff's Office and Doe Defendants to properly train and supervise deputies and K-9s and the existence of a special relationship between the unknown supervisors and the decedent.

17

1   Act," the Ninth Circuit has held that: (1) "the Bane Act does not require the 'threat, intimidation
2   or coercion' element of the claim to be transactionally independent from the constitutional
3   violation alleged"; and (2) "the Bane Act requires 'a specific intent to violate the arrestee's right
4   to freedom from unreasonable seizure.'" Reese, 888 F.3d at 1043 (quoting Cornell v. City &
5   Cnty. of San Francisco, 17 Cal. App. 5th 766, 225 Cal. Rptr. 3d at 382–83, 384 (2017)). "A
6   plaintiff bringing a claim under the Bane Act relating to an excessive force claim must show that
7   the officer 'intended not only the force, but its unreasonableness, its character as more than
8   necessary under the circumstances.'" S.T. v. City of Ceres, 327 F. Supp. 3d 1261, 1283 (E.D.
9   Cal. 2018) (quoting Reese, 888 F.3d at 1045). "[A] reckless disregard for a person's
10  constitutional rights is evidence of a specific intent to deprive that person of those rights." Reese,
11  888 F.3d at 1045) (internal quotation mark omitted) (quoting United States v. Reese, 2 F.3d 870,
12  885 (9th Cir. 1993)). Accord S.T., 327 F. Supp. 3d at 1283 ("In other words, a plaintiff must
13  show that a defendant had the specific intent to violate the plaintiff's constitutional rights. This
14  does not require a showing that a defendant knew he was acting unlawfully; '[r]eckless disregard
15  of the "right at issue" is all that [i]s necessary.'" (quoting Cornell, 17 Cal. App. 5th at 804)).

16         "Where, as here, the constitutional violation that allegedly occurred is excessive force,
17  specific intent may be shown by alleging Defendants intended not only the force used, but also
18  'its character as more than necessary under the circumstances.'" McAdams v. City of Newport
19  Beach, No. SACV1900615AGKESX, 2019 WL 6736919, at *2 (C.D. Cal. Oct. 2, 2019) (some
20  internal quotation marks omitted) (quoting Reese, 888 F.3d at 1045)). Here, the FAC alleges that
21  after a high-speed chase, Alfaro was eventually located by Majeski on foot near a rural
22  farmhouse. Alfaro was able to get back into his truck. Although Majeski and Iniguez attempted
23  to restrain Alfaro, he was able to start the truck and put it into motion as Majeski and Iniguez
24  moved away from the vehicle. Without ascertaining the location of his fellow officers, Defendant
25  Johnson began shooting into the truck at Alfaro, firing seven times, pausing, and then firing three
26  more times. Alfaro was hit with seven bullets, including one to the head, and pronounced dead at
27  the scene. (ECF No. 12 at 4.) Accepting the allegations as true and construing the alleged facts in
28  the light most favorable to Plaintiff, Plaintiff alleges sufficient factual detail about the

circumstances surrounding the alleged use of excessive force to plausibly infer Defendant Johnson acted with specific intent. See Shirazi v. Oweis, No. 5:21-CV-00136-EJD, 2022 WL 445763, at *8 (N.D. Cal. Feb. 14, 2022) (holding plaintiff adequately alleged Bane Act claim because "'specific intent' may be reasonably inferred form the allegation that [defendant] surrounded [plaintiff] and clubbed her repeatedly on the head, neck, shoulder, and body"); Est. of Gutierrez v. Castillo, No. 21-CV-01292-H-LL, 2021 WL 5989972, at *8 (S.D. Cal. Dec. 17, 2021) (holding plaintiff adequately alleged specific intent required for Bane Act claim based on allegations that defendant shot and killed decedent, who was experiencing a mental health crisis, was unarmed except for a thin curtain rod, and was screaming for help, where two other officers used nonlethal force and three other officers had their tasers out); McAdams, 2019 WL 6736919, at *3 (holding plaintiff adequately alleged specific intent required for Bane Act claim despite complaint not using the word "intent" based on allegations that defendant brutally threw plaintiff to ground and repeatedly tased him in the back); Cornish v. Oakland Hous. Auth., No. 18-5947 LB, 2019 WL 1746070, at *6 (Apr. 18, 2019) (holding plaintiff adequately alleged specific intent required for Bane Act claim based on allegations that defendant pulled her out of her car, threw her to the ground, and threatened to tase her).

Accordingly, the undersigned recommends Defendants' motion to dismiss be granted in part and denied in part on this ground. To the extent the Fifth Cause of Action can be construed as asserting a Bane Act claim on behalf of Plaintiff J.A. individually and against Defendants Iniguez and/or Majeski, it should be dismissed without leave to amend.

## IV.   CONCLUSION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Defendants' motion to dismiss (ECF No. 14) be GRANTED IN PART and DENIED IN PART;
2. The First Cause of Action and the Fifth Cause of Action against Defendants Iniguez and Majeski be DISMISSED WITHOUT LEAVE TO AMEND; and
3. The Third Cause of Action with respect to the failure to supervise and/or train be DISMISSED WITHOUT LEAVE TO AMEND.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **FOURTEEN (14) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 26, 2023**       /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE